RENDERED: FEBRUARY 19, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0038-MR


COMMONWEALTH OF KENTUCKY,
ENERGY AND ENVIRONMENT
CABINET                                                         APPELLANT


                        APPEAL FROM FRANKLIN CIRCUIT COURT
v.                      HONORABLE THOMAS D. WINGATE, JUDGE
                        ACTION NO. 17-CI-00987


CARL ERIC JOHNSON, A/K/A
BUBBA JOHNSON, D/B/A
JOHNSON'S LANDFILL AND
BUBBA'S TOWING                                                  APPELLEE


OPINION
REVERSING AND
REMANDING

** ** ** ** **

BEFORE: ACREE, DIXON, AND K. THOMPSON, JUDGES.

DIXON, JUDGE: Commonwealth of Kentucky Energy, and Environment Cabinet

("Cabinet") appeals the order entered on December 2, 2019, by the Franklin

Circuit Court. Following review of the record, briefs, and law, we reverse and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

Carl Eric Johnson ("Johnson") operated a landfill in the City of Olive Hill, Kentucky, without a waste disposal permit from the Cabinet. On May 8, 2015, the Cabinet issued Johnson a notice of violation of KRS[1] Chapter 224 concerning Environmental Protection. On October 6, 2015, Johnson and the Cabinet participated in an administrative conference and reached an agreement, documented in an agreed order entered April 27, 2016, in which Johnson admitted to the violations described therein and accepted civil liability for same. Johnson agreed to remediate the site within six months, submit monthly reports to the Cabinet, pay a $1,000 civil penalty, and waive his right to a hearing. However, Johnson subsequently failed to abide by the terms of the agreed order and to complete remediation of the site within the time contemplated by the parties' agreement.

After written warnings to Johnson regarding his noncompliance went unheeded, the Cabinet brought this action seeking to enforce the agreed order. Johnson answered, admitting "that being unrepresented by counsel he did enter into an agreement with the Commonwealth as to penalty amount and

---

[1] Kentucky Revised Statutes.

remediation[.]" ROA[2] 20. Johnson pled various affirmative defenses, including duress. Shortly thereafter, the Cabinet moved the trial court for a judgment on the pleadings. Johnson responded and moved the trial court to set aside the agreed order, again noting that he was unrepresented by counsel and, more specifically, that he was unaware of the exception in KRS 224.40-310 relied upon by the Cabinet regarding waste disposal at the time of the agreement. The Cabinet replied, asserting Johnson had the opportunity to retain counsel prior to entering the agreement and his failure to do so did not constitute a valid reason for setting aside the Agreed Order. Following a hearing on the matter, the trial court entered an order denying both the Cabinet's and Johnson's motions on July 3, 2018. Rather, the trial court *sua sponte* ordered the parties to include the City of Olive Hill in mediation and make it a party to the action, and it placed the agreed order in abeyance pending mediation.

Mediation was scheduled for August 15, 2018. A subsequent agreement was reached by the parties, as documented by a second Agreed Order, entered September 10, 2018. Johnson agreed to remediate the site within ten months, submit monthly reports to the Cabinet, attend bi-monthly status conferences, and pay a $10,000 civil penalty. Johnson failed to comply with the

---

[2] Record on appeal.

terms of this second agreed order, and remediation of the site was not completed within the timeframe agreed to by the parties.

On April 19, 2019, the Cabinet moved the trial court for entry of a judgment finding Johnson in breach of the second agreed order and awarding the Cabinet the stipulated penalty for said breach. Johnson responded, stating he had hired a contractor to remove debris, but after only two months of work, the contractor failed to perform additional waste removal. Johnson further claimed he attempted to procure another contractor to conduct the site remediation but was unable to do so until May 2019. Johnson acknowledged delay of performance required under the second agreed order but asserted it was beyond his control. On September 9, 2019, the trial court awarded the Cabinet a $5,000 judgment but declined to enjoin Johnson from abating all violations immediately. In the same order, the trial court *sua sponte* placed the abatement in abeyance pending the prosecution of Olive Hill; Carter County, Kentucky; and an unnamed third-party contractor.

The Cabinet moved the trial court to alter, amend, or vacate its September 9, 2019, order, requesting: the amount of the penalty be increased to reflect the parties' agreed-on amount; additional parties not be prosecuted for actions Johnson admitted were his responsibility; the trial court rescind its order that the Cabinet prosecute individuals and entities it had previously declined to

-4-

prosecute; and the order be made final and appealable. On October 21, 2019, the trial court granted the Cabinet's motion by amending the amount of the penalty from $5,000 to $10,000 but did not grant any other relief requested by the Cabinet.

The Cabinet moved the trial court to alter, amend, or vacate its October 21, 2019, order, requesting the order be made final and appealable. On December 2, 2019, the trial court entered an order granting the Cabinet's motion. This appeal followed.

## REFUSAL TO ENFORCE AGREED ORDER

On appeal, the Cabinet argues the trial court erred when it denied the Cabinet's motions for judgment on the pleadings, effectively refusing to enforce the agreed orders between the parties.[3] Under CR 12.03, "any party to a lawsuit may move for a judgment on the pleadings." *City of Pioneer Village v. Bullitt Cty. ex rel. Bullitt Fiscal Court*, 104 S.W.3d 757, 759 (Ky. 2003). A judgment on the pleadings "should be granted if it appears beyond doubt that the nonmoving party

---

[3] Johnson failed to file an appellee brief. Kentucky Rule of Civil Procedure (CR) 76.12(8)(c) provides:

> If the appellee's brief has not been filed within the time allowed, the court may: (i) accept the appellant's statement of the facts and issues as correct; (ii) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (iii) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

We choose to reverse the judgment for the reasons discussed herein.

-5-

cannot prove any set of facts that would entitle him/her to relief." *Id.* The trial court is "not required to make any factual determination; rather, the question is purely a matter of law." *James v. Wilson*, 95 S.W.3d 875, 883-84 (Ky. App. 2002). We review a judgment on the pleadings *de novo*. *Schultz v. Gen. Elec. Healthcare Fin. Servs., Inc.*, 360 S.W.3d 171, 177 (Ky. 2012).

We first note the Cabinet's argument slightly mischaracterizes the trial court's orders. The orders of September 9, 2019, October 21, 2019, and December 2, 2019, serve to, at least partially, grant the Cabinet's motion for a judgment on the pleadings. The September 9, 2019, order awarded the Cabinet $5,000 with post-judgment interest pursuant to the terms of the April 27, 2016, agreed order; the October 21, 2019, order amended the September 9, 2019, order to award the Cabinet $10,000 as provided for in the parties' September 10, 2018, agreed order; and the December 2, 2019, order granted the Cabinet's motion to alter or amend its October 21, 2019, order to make it final and appealable.

Nevertheless, the Cabinet takes issue with the portion of the September 9, 2019, order in which the trial court declined to enjoin Johnson from abating all violations immediately. In its order, the trial court stated:

> It has come to the Court's attention that other entities are also responsible for the transportation of materials to the dump site, located on Defendant's property. Those entities need to be held accountable, simultaneous with Defendant. The Court will take no further action against Defendant until Plaintiff has cited other responsible

parties. It is unrebutted that both the City of Olive Hill and Carter County contributed to the site, and a third-party contractor was also involved in the spread of material on the dump. None of these entities have ever been held accountable for their contribution to this problem. Prosecution of the Defendant, exclusively, is special enforcement, which is impermissible.

ROA 227-28. The trial court then held the matter of abatement in abeyance pending prosecution of other entities.

"An agreement to settle legal claims is essentially a contract subject to the rules of contract interpretation." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002). The agreed orders herein represent just such agreements. Under the rules of contract interpretation, the intentions of the parties are to be discerned from the four corners of the document, and where there is no ambiguity, extrinsic evidence should not be considered. *Id.* at 385.

The September 10, 2018, agreed order specifically acknowledged Johnson was not responsible for the abatement of waste caused by the public road construction. Numbered paragraphs 4 and 5 of the agreed order provide:

4. After approval of the determination of the Cabinet, Defendant shall remove the solid waste, except those materials including, but not limited to, sand, soil, rock, gravel, or bridge debris extracted as part of a public road construction project funded wholly or in part with state funds.

5. Defendant shall lawfully remove and dispose of all solid waste from his property, except waste exempted in

-7-

paragraph no. 4, within ten (10) months from execution
of this Agreed Order.

ROA 94. Johnson was able to—and did—alert the Cabinet of any waste on his property for which he felt he was not responsible at the time the agreement was made, and the Cabinet was free to exempt Johnson from remediating such waste. Thus, and as a matter of law, the trial court not only impermissibly declined to enforce the parties' agreement, but also needlessly attempted to obtain extrinsic evidence from other entities. The terms of the agreement were unambiguous and therefore, further evidence was irrelevant.

Furthermore, Johnson admitted he failed to remediate the site under the terms of the greed order in his response to the Cabinet's show cause motion. ROA 123-24. Considering Johnson's admission, and absent any genuine issue of material fact or allegations of fraud in the inducement, the trial court should have enforced the second agreed order. ("[A]bsent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. App. 2001) (citing *Cline v. Allis-Chalmers Corp.*, 690 S.W.2d 764 (Ky. App. 1985))). Accordingly, we must reverse and remand.

# JOINDER

The Cabinet next contends the trial court erred in its determination that Olive Hill, Carter County, and an unidentified contractor should be joined as parties in this action. As to joinder, we are mindful,

> [t]he decision as to necessary or indispensable parties rests within the sound authority of the trial judge in order to effectuate the objectives of the rule. The exercise of discretion by the trial judge should be on a case-by-case basis rather than on arbitrary considerations and such a decision should not be reversed unless it is clearly erroneous or affects the substantial rights of the parties.

*Commonwealth, Dep't of Fish & Wildlife Res. v. Garner*, 896 S.W.2d 10, 14 (Ky. 1995) (quoting *West v. Goldstein*, 830 S.W.2d 379 (Ky. 1992)).

CR 19.01 permits joinder of additional parties to a lawsuit under certain limited circumstances. CR 19.01, titled "Persons to be joined if feasible[,]" provides:

> [a] person who is subject to service of process, either personal or constructive, shall be joined as a party in the action if (a) in his absence complete relief cannot be accorded among those already parties, or (b) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case an involuntary

-9-

plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

Kentucky courts have interpreted CR 19.01 stating:

"[a]n indispensable party is one whose absence prevents the Court from granting complete relief among those already parties." *Milligan v. Schenley Distillers, Inc.*, 584 S.W.2d 751, 753 (Ky. App. 1979) (*superseded by statute on other grounds*). Likewise, the Court in [*West,* 830 S.W.2d 379], characterized a necessary party as one whose interest would be divested by an adverse judgment.

*Kentucky Ass'n of Fire Chiefs, Inc. v. Kentucky Bd. of Hous., Bldgs. & Const.*, 344 S.W.3d 129, 134 (Ky. App. 2010), *as modified* (Jan. 14, 2011). *See also Liquor Outlet, LLC v. Alcoholic Beverage Control Bd.*, 141 S.W.3d 378, 387 (Ky. App. 2004).

CR 19.01 is patterned after Federal Rule of Civil Procedure (FRCP) 19.[4] The only significant difference between the two concerns jurisdiction.

---

[4] FRCP 19, in pertinent part, states:

**(a) Persons Required to Be Joined if Feasible.**

**(1) *Required Party.*** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

**(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
**(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

Therefore, cases analyzing FRCP 19 are relevant in determining the proper interpretation and application of CR 19.01.

---

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) **Joinder by Court Order.** If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

(b) **When Joinder Is Not Feasible**. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

-11-

Under FRCP 19, there is a bifurcated process for determining whether a non-party is either necessary under subsection (a) or indispensable under subsection (b).[5] The Court in *American Express Travel Related Services, Co. v. Bank One-Dearborn, N.A.*, set forth the framework for how joinder determinations are to be made under this bifurcated process, observing:

> Rule 19 lays out a three-step test for courts to use in determining whether an absent party must be joined. [FRCP] 19. First, the court must determine whether the party is necessary and should be joined under Rule 19(a). If the person or entity is a necessary party, the court looks to whether joinder is feasible, or if a lack of subject matter or personal jurisdiction makes joinder impossible. Third, if joinder is not possible, the court must weigh the equities of the situation pursuant to Rule 19(b) and determine if the suit can continue in the party's absence or if the case should be dismissed because the party is indispensable. *See* [FRCP] 19; *Hooper v. Wolfe,* 396 F.3d 744, 747 (6th Cir. 2005); *Glancy v. Taubman Ctrs., Inc.,* 373 F.3d 656, 666 (6th Cir. 2004).

195 F. App'x 458, 460 (6th Cir. 2006). Applying this framework, rather than reviewing the applicability of each provision of FRCP 19, the analysis begins and ends with subsection (a)—CR 19.01's equivalent—if a non-party is determined not to be necessary to the litigation.

---

[5] In Kentucky, FRCP 19 is divided into CR 19.01 and CR 19.02. CR 19.01 is used to determine whether a party is necessary, like FRCP 19(a). CR 19.02 addresses indispensability and is essentially identical to FRCP 19(b).

In *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1 (1st Cir. 1998), the Court analyzed whether a non-party was necessary. Therein, Delgado's daughter was sexually abused and raped at a shopping center. Delgado sued the shopping center seeking damages for emotional pain and suffering he experienced as a result of his daughter's rape. The trial court determined Delgado's daughter was a necessary party to the litigation under FRCP 19(a)(2)(ii), reasoning:

> the potential for inconsistent verdicts in [Daughter's] state action and Delgado's federal action subjected defendants to a substantial risk of incurring multiple or otherwise inconsistent obligations. The court also observed that allowing the two actions to proceed would be an inefficient use of judicial resources and raised the specter of one of the plaintiffs using "offensive collateral estoppel" against defendants.

*Id.* at 2. On appeal, the Court considered the correct interpretation and application of FRCP 19. Noting a plaintiff has the right to control his litigation, the Court held FRCP 19(a) balances those rights "against the defendants' (and systemic) interests in avoiding judgments giving rise to 'inconsistent obligations.'" *Id*. at 3 (citation omitted). The Court went on to explain the meaning of "inconsistent obligations" under the Rule:

> "Inconsistent obligations" are not, however, the same as inconsistent adjudications or results. *See Micheel v. Haralson*, 586 F.Supp. 169, 171 (E.D. Pa. 1983); *see also* 4 James Wm. Moore *et al.*, Moore's Federal Practice ¶ 19.03 (3d ed. 1997). Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the

same incident. *See* 4 Moore's at ¶ 19.03. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum. *See* [*Nat'l*] *Union Fire Ins. Co. of Pittsburgh v. Massachusetts Mun. Wholesale Elec. Co.*, 117 F.R.D. 321, 322 (D. Mass. 1987) (citing *Bedel v. Thompson*, 103 F.R.D. 78, 81 (S.D. Ohio 1984)); *see also Boone v.* [*Gen.*] *Motors Acceptance Corp.*, 682 F.2d 552, 554 (5th Cir. 1982) (the threat of inconsistent obligations, not multiple litigations, informs [FRCP] 19(a) considerations); *Field v. Volkswagenwerk AG*, 626 F.2d 293, 301 (3d Cir. 1980) (similar). Unlike a risk of inconsistent obligations, a risk that a defendant who has successfully defended against a party may be found liable to another party in a subsequent action arising from the same incident—i.e., a risk of inconsistent adjudications or results—does not necessitate joinder of all of the parties into one action pursuant to [FRCP] 19(a). *See Field*, 626 F.2d at 301. Moreover, where two suits arising from the same incident involve different causes of action, defendants are not faced with the potential for double liability because separate suits have different consequences and different measures of damages. *See In re Torcise*, 116 F.3d 860, 866 (11th Cir. 1997).

*Id.* With these considerations in mind, the Court then rejected the trial court's holding as to joinder.

> In this situation, defendants faced a federal action and a state action arising from the same incident. In reasoning that defendants could be facing "inconsistent obligations," the district court noted that defendants could be found liable to Delgado in federal court, but not liable to [Daughter] in state court, or vice versa. Although the court also looked to other factors in reaching its conclusion, it is this determination—which is really a determination that defendants faced the threat of ***inconsistent results***—that grounded the court's ruling

-14-

> that [Daughter] was a necessary party to this lawsuit. Yet
> as we have explained, the mere possibility of inconsistent
> results in separate actions does not make the plaintiff in
> each action a necessary party to the other.

*Id.* (emphasis added). *See also LeBlanc v. Cleveland*, 248 F.3d 95 (2d Cir. 2001);

*Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407 (10th Cir. 1996).

Applied to the case herein, the failure to join additional parties poses no threat of

inconsistent obligations under CR 19 for those already parties.

CR 19.01 and FRCP 19(a) permit joinder if "in [the party's] absence

complete relief cannot be accorded among those already parties." In *Janney*

*Montgomery Scott, Inc. v. Shepard Niles, Inc.*, the Court noted,

> Under Rule 19(a), we ask first whether complete relief
> can be accorded to the parties to the action in the absence
> of the unjoined party. [FRCP] 19(a)(1). A Rule 19(a)(1)
> inquiry is limited to whether the district court can grant
> complete relief to the persons already parties to the
> action. *The effect a decision may have on the absent*
> *party is not material.*

11 F.3d 399, 405 (3d Cir. 1993) (emphasis added). "It is a misapplication of Rule

19(a) to add parties who are neither necessary nor indispensable, who are not

essential for just adjudication and who have a separate cause of action entirely."

*Bakia v. Cty. of Los Angeles*, 687 F.2d 299, 301 (9th Cir. 1982) (internal citation

omitted). The criteria of "necessary" has been further explained as follows:

> [i]f the interests of necessary parties are separable from
> those of parties before the court, so that the court can
> proceed to a decree, and do complete and final justice,

without affecting other persons not before the court, the persons not before the court are not [necessary] parties, and the court may proceed with the case and adjudicate upon the rights of those who are made parties.

59 Am.Jur.2d *Parties* § 130 (2002). Here, complete and final justice can be obtained without joinder of the additional parties.

As explained in *Corpus Juris Secundum*,

Parties are not necessary to a complete determination of the controversy unless they have *rights which must be ascertained and settled* before the rights of the parties to the suit can be determined. Accordingly, a person is not a necessary party where he or she has *no interest in the subject matter of the litigation which can be affected by a judgment or decree rendered therein* as where an adjudication of the rights of the other parties would in no way affect his or her rights or where his or her presence before the court is not necessary to a determination of the issues joined between the parties to the action.

67A C.J.S. Parties § 3 (2020) (emphasis added) (footnotes omitted). The trial court failed to identify its—or any—basis for compelling joinder herein. There is no indication that the additional parties' interests, if any, in the subject matter of this litigation would be affected by a failure to be joined. Thus, there is no valid basis pursuant to CR 19.01 to mandate joinder. Since the additional parties cannot be viewed as necessary parties, we need not address any other provision of the rule. Ultimately, since these additional parties are not necessary to the litigation, the trial court's order to join them to this action was erroneous and must be reversed.

## SEPARATION OF POWERS

The Cabinet further alleges the trial court violated the separation of powers provisions of the Kentucky Constitution. Concerning separation of powers, Section 27 provides:

> The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.

KY. CONST. §27. Likewise, Section 28 states:

> No person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

KY. CONST. §28.

Regarding the power of Kentucky's executive branch, Section 69 mandates:

> The supreme executive power of the Commonwealth shall be vested in a Chief Magistrate, who shall be styled the "Governor of the Commonwealth of Kentucky."

KY. CONST. §69. Kentucky's executive branch also acts through its administrative agencies. One of those agencies is the Cabinet. Pursuant to KRS 224.10-110:

> The Energy and Environment Cabinet *shall enforce the rules and regulations* adopted by the secretary of the Energy and Environment Cabinet for the regulation and control of the matters set out below and shall formulate,

-17-

promote, establish and execute policies, plans and programs relating to natural resources and environmental protection, including but not limited to the following matters:

(1) The proper disposal of waste[.]

(Emphasis added).

Ordinarily, "[j]udicial review of an administrative agency's action is concerned with the question of arbitrariness." *Com. Transp. Cabinet v. Cornell*, 796 S.W.2d 591, 594 (Ky. App. 1990) (citing *Am. Beauty Homes Corp. v. Louisville and Jefferson Cty. Planning and Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964)). Section 2 of the Kentucky Constitution prohibits the exercise of arbitrary power by an administrative agency. *Id.*

> In determining whether an agency's action was arbitrary, the reviewing court should look at three primary factors. The court should first determine whether the agency acted within the constraints of its statutory powers or whether it exceeded them. (citation omitted). Second, the court should examine the agency's procedures to see if a party to be affected by an administrative order was afforded his procedural due process. The individual must have been given an opportunity to be heard. Finally, the reviewing court must determine whether the agency's action is supported by substantial evidence. (citation omitted). If any of these three tests are failed, the reviewing court may find that the agency's action was arbitrary.

*Cornell*, 796 S.W.2d at 594.

Here, we begin our review by turning to guidance from the United States Supreme Court. In *Heckler v. Chaney*, the Court held:

> This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's **absolute discretion**. *See United States v. Batchelder*, 442 U.S. 114, 123-124, 99 S.Ct. 2198, 2203-2204, 60 L.Ed.2d 755 (1979); *United States v. Nixon*, 418 U.S. 683, 693, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974); *Vaca v. Sipes*, 386 U.S. 171, 182, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 (1967); *Confiscation Cases*, 7 Wall. 454, 19 L.Ed. 196 (1869). This recognition of the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement.

470 U.S. 821, 831, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985) (emphasis added). Thus, the trial court's order for the Cabinet to prosecute additional entities is inappropriate whether on these grounds—because the decision to prosecute is within the Cabinet's absolute discretion—or as a violation of the separation of powers doctrine—because it is the Cabinet's sole responsibility to enforce rules and regulations concerning waste disposal under KRS 224.10-110 rather than the court's. Consequently, the trial court's order for the Cabinet to prosecute other entities must be reversed.

# CONCLUSION

Therefore, and for the foregoing reasons, the order entered by the Franklin Circuit Court is REVERSED and REMANDED for further proceedings consistent with this Opinion.

ACREE, JUDGE, CONCURS.

THOMPSON, K., JUDGE, DISSENTS AND DOES NOT FILE SEPARATE OPINION.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Carl Williams
Daniel Cleveland
Frankfort, Kentucky